IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HARVEY PROPERTY MANAGEMENT COMPANY, INC., a Maryland corporation, et al.,<br><br>                              Plaintiffs,<br>        v.<br><br>THE TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,<br><br>                              Defendant. | <br><br><br><br><br><br><br><br><br>Case No. 2:12-CV-01536-SLG |

### ORDER RE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendant The Travelers Indemnity Company's Motion for Partial Summary Judgment at Docket 329. Plaintiffs opposed at Docket 341, and Defendant replied at Docket 345. Oral argument was held on the motion on May 10, 2016. For the reasons discussed below, the Court will grant Defendant's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts, viewed in the light most favorable to Plaintiffs for purposes of this partial summary judgment motion, are as follows:

The Harvey Property Management Company ("Harvey Property") managed two properties in Phoenix, Arizona: Lynwood Apartments and Villa Del Sol Apartments. Harvey Property entered into an insurance contract with The Travelers Indemnity

Company ("Travelers") to provide property coverage for the two properties. On October 5, 2010, while the policy was in effect, Harvey Property alleges that a storm containing severe wind and hail damaged the exterior of the buildings, including the concrete tile roofs. Harvey Property submitted a "hail storm claim" for the loss to Travelers on July 18, 2011.[1]

Edward Cespedes, a Travelers adjuster, inspected the properties on July 26 and 27, 2011, with Harvey Property's contractor and its public adjuster, Karl Denison.[2] Mr. Cespedes concluded that there were "extensive right corner chips on the tiles and wind damaged tiles/ridges," but he did not believe the damages were consistent with hail.[3] The next day, July 28, Mr. Cespedes and Travelers' local Unit Manager Robb Harrell inspected the roofs together.[4] In claim notes from August 2, 2011, Mr. Harrell noted that over 95% of the damage to the tiles was right corner cracking, and that there was "minor damage to soft metal collateral."[5] Both Mr. Harrell and Mr. Cespedes did not believe the damage to the roofs was caused by hail.

Because Mr. Harrell and Mr. Cespedes did not believe that hail caused the roof damage, Travelers retained Matthew Sitzmann from Haag Engineering to inspect the roofs.[6] On August 15, 2011, Mr. Sitzmann and Mr. Harrell inspected five of the roofs at

---

[1] Docket 263-5 (Acknowledgement); Docket 342 (Harvey SOF) at 13.

[2] Docket 342 (Harvey SOF) at 4.

[3] Docket 342 (Harvey SOF) at 13.

[4] Docket 342 (Harvey SOF) at 5.

[5] Docket 342 (Harvey SOF) at 14.

[6] Docket 342 (Harvey SOF) at 5, 15.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 2 of 19

each property.[7]  Mr. Sitzmann did not ask for a section of the roof to be taken off so that he could inspect the felt underlayment.[8]

Mr. Sitzmann released his report on September 2, 2011.  The report concluded that the roofs had not been damaged by hail, and attributed the thousands of right corner cracks to "handling-, installation-, and servicing-related activities, imperfections [i]n the tiles, and impacts from rocks thrown onto the roofs."[9]  Mr. Sitzmann also noted displaced tiles at the rake edges of the roofs, and opined that these displacements were possibly from wind.[10]

On September 27, 2011, Mr. Denison sent Travelers an estimate for the damage to the roofs, totaling approximately $3.5 million for the complete replacement of the tile roofs at both the properties.[11]  And on October 10, 2011, Mr. Denison contacted Mr. Harrell and stated that he disagreed with Mr. Sitzmann that the damage to the tiles was from causes other than hail.[12]  Travelers suggested a joint inspection of the roofs to try and work out the parties' differences.

---

[7] Docket 342 (Harvey SOF) at 6.  Apart from Mr. Miller's conclusory statements in his report, the Court could not find evidence in the record that addressed whether inspecting this portion of the roofs was an acceptable approach for these particular roofs.

[8] Docket 342 (Harvey SOF) at 18.

[9] Docket 10-12 (HAAG Engineering Roof Evaluations) at 7–8.

[10] Docket 342 (Harvey SOF) at 6.

[11] Docket 342 (Harvey SOF) at 7.

[12] Docket 342 (Harvey SOF) at 16.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 3 of 19

On November 17, 2011, Mr. Harrell and another Travelers adjuster, along with Mr. Denison and Harvey Property's contractor, inspected one of the properties again.[13] Harvey Property asserts that at this inspection Mr. Harrell was "aggressive in his tone, posture and physical presence toward" Mr. Denison.[14] It was during this inspection that Mr. Denison first suggested that the damage to the tiles was from wind, as well as hail.[15]

Shortly thereafter, Mr. Denison contacted Mr. Harrell and requested that Travelers consider wind damage as well as hail damage.[16] In December 2011, Travelers asked Mr. Sitzmann to review his report and determine if the damage could have been caused by wind.[17] Mr. Sitzmann prepared a supplemental report dated January 17, 2012, which concluded that while wind had displaced a few tiles from the rakes and ridges of the roofs, likely over the course of multiple storms, it was not responsible for the right corner cracking.[18]

Travelers arrived at a final estimate of approximately $312,000 for damages attributable to the storm, including the tiles that Mr. Sitzmann opined were displaced by wind over the years.[19] Travelers asserted that the right corner cracking (the main damage

---

[13] Docket 342 (Harvey SOF) at 7.

[14] Docket 342 (Harvey SOF) at 17.

[15] Docket 329-5 (Woolsey Depo.) at Tr. 73–75; Docket 342 (Harvey SOF) at 17–18; Docket 329-5 (Letter, Ex. 8) at 93.

[16] Docket 342 (Harvey SOF) at 17.

[17] Docket 342 (Harvey SOF) at 8.

[18] Docket 342 (Harvey SOF) at 9.

[19] Docket 17-2 (RCV Estimate) at 47; Docket 332 (Travelers SOF) at 6.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 4 of 19

to the roof) was not due to the hail storm and was specifically excluded from coverage under the terms of the policy.[20] Travelers paid Harvey Property approximately $245,000, which it indicated was the undisputed portion of the claim.[21]

Harvey Property demanded an appraisal to resolve the dispute.[22] After Travelers refused, Harvey Property initiated this action in state court on June 12, 2012 for breach of contract and breach of the duty of good faith and fair dealing.[23] Travelers removed the case to federal court on July 16, 2012. This Court ordered the appraisal over Travelers' objection, which was completed on January 13, 2014.[24] Travelers paid an additional $40,000 for the undisputed portions of the claim based on the appraisal award.[25] After appraisal, the disputed portion of the award for the two roofs was set at an ACV value of approximately 3.2 million dollars.[26]

The case is set for trial to resolve the causation of the damage to the roofs and Plaintiffs' bad faith claim. Travelers now moves for partial summary judgment, asserting that even when viewing the facts in the light most favorable to Harvey Property, no reasonable jury could find that Travelers acted in bad faith.

---

[20] Docket 10-18 at 3.

[21] Docket 17 at 3. Travelers explained the discrepancy in values because the policy "pays no more than the actual cash value, which is generally defined as the replacement cost minus recoverable depreciation, until the property is repaired or replaced." Docket 329 (Mot.) at 5 n.3.

[22] Docket 10-17 at 2–3.

[23] Docket 10-18 at 2.

[24] Docket 342 (Harvey SOF) at 12.

[25] Docket 342 (Harvey SOF) at 13.

[26] Docket 64-1 (Appraisal Award).

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 5 of 19

## DISCUSSION

**I.   Jurisdiction**

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

**II.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, a court must draw "all justifiable inferences" in the non-moving party's favor.[27] The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[28] If the moving party meets this burden, the non-moving party must present specific evidence demonstrating the existence of a genuine issue of fact.[29] The non-moving party may not rely on mere allegations or denials. To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[30] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment to the moving party is appropriate.[31]

---

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

[29] *Anderson*, 477 U.S. at 250; *Oracle*, 627 F.3d at 387.

[30] *Anderson*, 477 U.S. at 248.

[31] *Id.* at 249–50 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 84–85 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 6 of 19

## III. Bad Faith Claim

The Arizona Supreme Court has held that "one of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection."[32] Thus, under Arizona law "there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim."[33] The insurance company must "immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim."[34]

"The tort of bad faith arises when [an] insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'"[35] To prove bad faith, a plaintiff must show: (1) the insurer unreasonably investigated, evaluated, or processed its claim (an objective test); and (2) the insurer either knew it was acting unreasonably or "act[ed] with such reckless disregard that such knowledge may be imputed to it (a subjective test)."[36] An insurer may challenge a claim it believes is "fairly debatable" without acting in bad faith, but only if the insurer acts reasonably in investigating, evaluating, and processing the

---

[32] *Rawlings v. Apodaca*, 726 P.2d 565, 571 (Ariz. 1986).

[33] *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *see also Rawlings*, 726 P.2d at 570 ("[T]he insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.").

[34] *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000).

[35] *Id.* (quoting *Noble*, 624 P.2d at 868).

[36] *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 794–95 (Ariz. Ct. App. 2012) (internal quotation marks omitted).

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 7 of 19

claim.[37]  "Thus, if an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith 'without regard to its ultimate merits.'"[38]  Ordinarily, an insurer's "belief in fair debatability 'is a question of fact to be determined by the jury.'"[39]  However, "if plaintiff offers no significant evidence that calls into question defendant's belief that the claim is debatable, [a] court may enter judgment as a matter of law."[40]

Travelers moves for summary judgment on Harvey Property's bad faith claim, asserting that the undisputed facts show that the claim is fairly debatable and that it handled the claim reasonably.[41]  The main focus of the arguments made by the parties is

---

[37] *See Zilisch*, 995 P.2d at 279–80; *Rawlings*, 726 P.2d at 572; 5th Revised Arizona Jury Instructions (Civil) (Duty of Good Faith and Fair Dealing) ("To prove that [*name of defendant*] breached the duty of good faith and fair dealing, [*name of plaintiff*] must prove: 1. [*name of defendant*] intentionally [denied the claim] [failed to pay the claim] [delayed payment of the claim] without a reasonable basis for such action; and 2. [*name of defendant*] knew that it acted without a reasonable basis, or [*name of defendant*] failed to perform an investigation or evaluation adequate to determine whether its action was supported by a reasonable basis.").

[38] *Zilisch*, 995 P.2d at 280 (quoting *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1270 (Ariz. 1992)).

[39] *Id.* at 279 (quoting *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1137 (Ariz. 1982)).

[40] *Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1100 (D. Ariz. 2003).

[41] In its summary judgment briefing, Plaintiffs have not asserted bad faith based on Travelers' employees' compensation, institutional bad faith, or the dispute over the appraisal clause. And, even if Plaintiffs were making arguments on these bases, the Court finds that no reasonable jury could find for Plaintiffs on these issues.  A plaintiff must connect its allegations to the specific facts of the case.  *See, e.g.*, *Taft v. Am. Family Mut. Ins. Co.*, No. CV-11-2599, 2013 WL 5498226, at *6 (D. Ariz. Oct. 1, 2013) ("'[I]nstitutional' bad faith is not a commonly recognized and accepted legal claim."); *Milhone v. Allstate Ins. Co.*, 289 F. Supp. 2d 1089, 1102 (D. Ariz. 2003) ("[B]ecause all of the above general allegations of bad faith, assuming they are true, did not affect the processing of Plaintiff's claim *in this case* the Court finds that a cause of action for bad faith cannot lie based on these allegations.  In other words, if Plaintiff was not personally damaged by the allegedly inappropriate practices, Plaintiff cannot base his claim on such practices.").  Here, Plaintiffs have failed to connect any alleged institutional bad faith or the like to the specific facts of this case, and the dispute over the applicability of the appraisal clause that prompted this litigation was fairly debatable.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 8 of 19

on the nature and reasonableness of the investigation. First, Travelers asserts that it promptly investigated the claim for hail damage, and then supplemented its investigation when Harvey Property added wind damage as a cause, eventually paying Harvey Property for accumulated wind damage. Second, Travelers asserts that Harvey Property has not provided evidence that Travelers' conduct was subjectively unreasonable.[42]

Harvey Property responds that Travelers' investigation was "cursory at best, [and] more likely intentionally/recklessly incomplete," and that it "willfully failed to investigate large portions of the loss at both loss locations."[43] Harvey Property asserts that Travelers' investigation was objectively unreasonable because: (1) Mr. Sitzmann did not himself return to the properties in late 2011 to inspect for wind damage or open up the roof; (2) Mr. Sitzmann did not inspect the metal carport roofs; (3) Travelers was on notice from the words "hail storm" that the claim included wind damage; and (4) Travelers should have interviewed the property manager and the maintenance manager.[44] Harvey Property asserts that Travelers was subjectively unreasonable because it did not immediately investigate wind damage and because Mr. Harrell was aggressive in his tone and posture to Mr. Denison at the joint roof inspection in November 2011.[45]

The record here reflects that Travelers promptly investigated the claim and paid Harvey Property the undisputed portion of the loss. When it appeared that the causation

---

[42] Docket 329 (Mot.) at 9–15.

[43] Docket 341 (Opp'n) at 3.

[44] Docket 341 (Opp'n) at 7–14.

[45] Docket 341 (Opp'n) at 14–15.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 9 of 19

of the loss was disputed, Travelers hired an engineer to inspect the roofs.[46] And the evidence in the record demonstrates that when Travelers was presented with information that differed from Harvey Property's initial claim for hail damage, it promptly conducted additional investigation and ordered a supplemental report from Mr. Sitzmann regarding wind damage.[47] Moreover, Mr. Denison does not appear to have provided any evidence to Travelers that would have led Travelers to reconsider Mr. Sitzmann's initial or supplemental reports. And even if an expert's findings as to the source of the damage are ultimately in error, a claim still may be fairly debatable.[48]

Two cases cited by Plaintiffs—*Zilisch v. State Farm Automobile Insurance, Co.*,[49] and *Nardelli v. Metropolitan Group Property and Casualty Insurance Co.*[50]—do not persuade the Court otherwise. In *Zilisch*, a teenage drag racer struck the car driven by Zilisch's fiancé, killing her fiancé and injuring Zilisch. Zilisch sought underinsured motorist coverage from her insurer, State Farm. She visited multiple doctors, all of whom reported that her condition from the accident was permanent. One of the doctors told Zilisch that her condition was permanent but did not provide a written report; State Farm then spent

---

[46] *Cf. HM Hotel Properties v. Peerless Indem. Ins. Co.*, No. CV12-0548 PHX-DGC, 2013 WL 4507602, at *5 (D. Ariz. Aug. 23, 2013), *aff'd*, 624 F. App'x 520 (9th Cir. 2015) ("Defendant retained two independent experts to inspect the roof on separate occasions. Both reported that the roof damage was not caused by hail.").

[47] *Cf. Hoa v. State Farm Fire & Cas. Co.*, No. CV-12-631-PHX-SMM, 2014 WL 1152967, at *7 (D. Ariz. Mar. 14, 2014) ("The Court finds that State Farm gave El Capitan additional consideration at each point in the investigation.").

[48] *Cf. HM Hotel Properties*, 2013 WL 4507602, at *5.

[49] 995 P.2d 276 (Ariz. 2000).

[50] 277 P.3d 789 (Ariz. Ct. App. 2012).

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 10 of 19

five months tracking down a report from this doctor. Four months later, State Farm offered a total of $55,000 on the claim even though State Farm's adjuster and its own attorney both recommended offering $75,000.[51] The Arizona Supreme Court held that a jury could conclude that State Farm acted unreasonably in "insisting on seeing [the] non-existent" report from the one doctor, even though the permanency of the injury was undisputed.[52] And it held that a jury could find that State Farm acted unreasonably in waiting an additional four months after receiving the missing report before making an offer, and then offering only $55,000 in those circumstances.[53]

In *Nardelli*, the plaintiffs' vehicle was stolen and was later located, ruined, in Mexico. The plaintiffs had bought the vehicle the year before for $35,750, and they submitted a claim to their insurer. The insurer hired an appraiser, who estimated the damage to the vehicle as $815, but the plaintiffs later learned that the appraiser had not even opened the hood of the car. The plaintiffs had the vehicle inspected by another body shop, which opined that the car needed a new engine, among other things. Under the policy, the insurer was required to pay the lesser of (1) the actual cash value of the vehicle at the time of the loss (roughly $24,000), or (2) the cost to repair or replace the vehicle "with other of like kind and quality."[54] Thus, under the policy, only if the vehicle could be repaired or replaced to its pre-loss condition could the insurer select the second

---

[51] *Zilisch*, 995 P.2d at 277–79, 281.

[52] *Id.* at 280.

[53] *Id.* at 281.

[54] *Nardelli*, 277 P.3d at 794.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 11 of 19

option.  The insurer then estimated the damage at $11,009 and paid the plaintiffs accordingly, but later admitted that its estimate had used a labor rate that was far too low. The plaintiffs also presented considerable evidence that the vehicle could not be returned to its pre-loss condition, or that the cost to do so would be much higher than $11,009. The jury returned a verdict for the plaintiffs for both compensatory and punitive damages. The Arizona Court of Appeals affirmed, holding that the jury's verdict was supported by sufficient evidence of bad faith because the insurer decided to repair instead of total the vehicle, sent the plaintiffs a check for an amount that did not cover the repair costs, and failed to advise the plaintiffs of the relevant policy provision that required it to return the vehicle to its pre-loss condition.[55]

Both *Zilisch* and *Nardelli* present very different factual scenarios and much stronger evidence of bad faith than in this case.  Here, no reasonable jury could find that Travelers delayed its investigation, as any delay that occurred was due to the need to examine possible wind damage, first raised by Plaintiffs in November 2011.  And there is no evidence that Travelers had the subjective intent to "lowball" Harvey Property, as in *Zilisch* and *Nardelli*.  More on point would be cases that relate directly to a reasonable inspection for roof damage.  In one hail storm case, the district court denied summary judgment on bad faith because: (1) the insurer admitted it had made a mistake on its estimate but refused to correct the mistake; and (2) its inspector had not gotten on a ladder to inspect the ceiling or made any efforts to remove the paneling even when the

---

[55] *Id.* at 793–95.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 12 of 19

wooden ceiling material was swollen and badly stained by water saturation.[56]  Another case in which the district court denied summary judgment on the plaintiff's bad faith claim featured testimony from the adjuster that he was reviewed annually for "leakage" in his claim payments, from which the court held that a jury could infer the insurer had acted in bad faith.[57]  Here, there is no evidence of compensation or claims handling practices for the Travelers employees directly involved in this case that raise questions of bad faith.  And there is no evidence in the record that Travelers adjusted the claim in such a way that it knew it was making errors or refused to rectify such errors.  Instead, when Harvey Property communicated that it believed Travelers had erred by not specifically inspecting for wind damage, Travelers corrected this alleged mistake.  There are no Arizona cases cited to by the parties or found by the Court in which summary judgment was denied for bad faith on facts comparable to those present here.

Addressing Harvey Property's specific arguments in its opposition to partial summary judgment in turn,[58] it first asserts that Mr. Sitzmann should have returned to the properties to assess for wind damage and should have inspected the metal carport roofs.  But Harvey Property fails to cite facts that would tend to show that Mr. Sitzmann could have gained any extra information by returning to the property.  Mr. Sitzmann had

---

[56] *Gray v. Am. Family Mut. Ins. Co.*, No. CV-11-1635-PHX-SMM, 2013 WL 5274242, at *9 (D. Ariz. Sept. 18, 2013).

[57] *Jeffers v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 2:12-CV-02444 JWS, 2014 WL 4259485, at *4 (D. Ariz. Aug. 28, 2014).  "Leakage" is the overpayment of claims.

[58] Many other issues were raised in the motions *in limine*, but were not raised in the partial summary judgment briefing.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 13 of 19

documented "thousands"[59] of tiles and took numerous pictures of the roofs at the initial inspection, and evidently determined he could get any extra information he needed from these pictures.  And Harvey Property has not provided evidence that an inspection of the felt underlayment would have been warranted based on the properties' appearance in August 2011.  Finally, the estimate as filed by Harvey Property did not include damage to the metal carport roofs.[60]  Although there is one reference in the claim notes to damage sustained by "soft metal collateral,"[61] which Harvey Property asserts relates to the metal carport roofs, Travelers is not required to investigate losses that Harvey Property did not clearly present.  Thus, absent a claim for damage to the carports, it was not objectively unreasonable for Mr. Sitzmann to fail to inspect those roofs.

     Second, Harvey Property asserts that Travelers acted objectively unreasonably because it failed to immediately inspect for wind damage as well as hail damage in July 2011.  But the claim Harvey Property submitted, by its own admission, was a "hail storm claim."  If Harvey Property wanted Travelers to investigate for wind damage as well as hail damage, it should have explicitly stated that as a cause for damage.  Although "storm" may imply a wind strong enough to itself cause damage, it is not inherent in a "hail storm claim."  And, once Travelers was put on notice that Harvey Property was also making a claim for wind damage, it promptly investigated that claim and asked its expert to amend

---

[59] Docket 342 (Harvey SOF) at 6.

[60] Docket 329-2 at 19–90.

[61] Docket 343-1 (Cespedes Depo. Ex. 2) at 18.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 14 of 19

his report to include it.  The Court does not find that Travelers acted objectively unreasonably by not investigating wind damage from July through November 2011.

Third, Harvey Property asserts that Travelers should have interviewed the property manager and the maintenance manager to determine the condition of the roofs before the hail storm. Harvey Property argues that these witnesses were not interviewed, but Travelers provides evidence that they were at least spoken to.[62] Harvey Property has provided no evidence, such as statements from these persons, that Travelers did not interview them. And Harvey Property itself refers to an interview between Travelers and the on-site manager, at which the on-site manager informed Travelers that the cracks had not existed before the storm.[63] The Court finds that Harvey Property has failed to provide evidence showing that the on-site managers were not interviewed. While the Court must view the evidence in the light most favorable to the non-moving party, the Court has not been presented with evidence that these persons were not interviewed.

Harvey Property also offers the opinion of its claim-handling expert, Charles Miller, as support for its assertion that Travelers handled the claim unreasonably.  Mr. Miller opined that Travelers acted in bad faith because it (1) failed to interview the property managers, employees, or other contractors; (2) failed to consider such things as cosmetic damage, footfall, and vandalism; and (3) retained an engineering firm that it had frequently used in the past.[64]  But the Court finds that Mr. Miller's report does not create

---

[62] Docket 329-5 (Woolsey Depo.) at Ex. 8 (Letter).

[63] Docket 342 (Harvey SOF) at 19; Docket 329-5 (Woolsey Depo.) at Ex. 8 (Letter).

[64] Docket 342 (Harvey SOF) at 20–21. The Court notes that in his expert report, Mr. Miller raised various other grounds as the basis for bad faith.  To the extent that Harvey Property has not asserted these grounds in its opposition, the Court finds that they are waived.  Mr. Miller's report

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 15 of 19

a genuine issue for trial with respect to Harvey Property's bad faith claim. "Courts frequently exclude conclusory expert testimony that an insurer has acted in bad faith on the ground that the opinion is nothing more than a legal conclusion."[65] Without specific factual support, Mr. Miller's opinion that Travelers acted in bad faith is too conclusory to raise triable issues of fact and defeat summary judgment. His opinion regarding interviews with the on-site manager conflicts with evidence in the record, as discussed above. Moreover, Mr. Miller explicitly states that Travelers was told by the on-site manager that the damage did not predate the storm, which is the same information Mr. Miller argues Travelers should have sought out from other persons. And Mr. Miller's contention that Haag Engineering was inherently biased because Travelers had retained it in the past is not premised on any facts specific to this case.[66] Without facts specific to this case—beyond simply prior retention of Haag Engineering—the Court will not infer bias. Finally, Mr. Miller asserts that it was unreasonable not to investigate vandalism, footfall, and cosmetic damages, but Harvey Property's claim did not include any of these

---

speaks at great length about Travelers' employee compensation, but this issue was not raised in Harvey Property's opposition, and the Court has addressed compensation in its rulings on the motions *in limine*.

[65] *Keshish v. Allstate Ins. Co.*, 959 F. Supp. 2d 1226, 1240–41 (C.D. Cal. 2013) (citing *Montoya Lopez v. Allstate Ins. Co.*, 282 F. Supp. 2d 1095, 1105 (D. Ariz. 2003) ("Cerf.'s letter consists primarily of legal conclusions as to the reasonableness of Allstate's actions, which are not proper matters for an expert opinion and are to be disregarded"); *Emp'rs Reinsurance Corp. v. Mid–Continent Cas. Co.*, 202 F. Supp. 2d 1212, 1219 (D. Kan. 2002) (excluding an expert's testimony where the expert opined that an insurer had breached its duty of good faith and fair dealing because such an opinion "constitutes an impermissible attempt to apply the law to the facts of the case to form a legal conclusion")).

[66] *See, e.g.*, *Taft v. Am. Family Mut. Ins. Co.*, No. CV-11-2599, 2013 WL 5498226, at *6 (D. Ariz. Oct. 1, 2013) ("'[I]nstitutional' bad faith is not a commonly recognized and accepted legal claim.").

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 16 of 19

causes. As such, the Court finds that it was not unreasonable for Travelers to confine its investigation to Harvey Property's hail storm claim, and later, wind damage claim.

Although an insurance company may be liable for bad faith if it "acts unreasonably in the manner in which it processes a claim,"[67] no reasonable juror could consider the facts argued by Harvey Property and conclude that Travelers' investigation and processing of the claim was so deficient as to constitute a breach of the duty of good faith and fair dealing. And from the evidence in the record, particularly the notes from the multiple inspections and the Haag Engineering report, the Court finds that no reasonable jury could find that the claim was not "fairly debatable."

Moreover, even had the Court found that a triable issue of fact remained as to the objective reasonableness of Travelers' investigation or the debatability of the claim, the Court finds that Harvey Property has failed to demonstrate a triable issue of fact regarding whether "the insurer either knew it was acting unreasonably or act[ed] with such reckless disregard that such knowledge may be imputed to it."[68] Harvey Property asserts that Travelers was subjectively unreasonable because it failed to consider wind damage from the beginning of the claim, because Mr. Sitzmann did not return to the property, and because Mr. Harrell was aggressive and rude to Mr. Denison at a joint inspection in November 2011.[69] For the reasons stated above, the Court finds that Travelers' action in initially assessing for only hail damage and Mr. Sitzmann's failure to return to the

---

[67] *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000).

[68] *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 277 P.3d 789, 794–95 (Ariz. Ct. App. 2012) (internal quotation marks omitted).

[69] Docket 341 (Opp'n) at 15.

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 17 of 19

property is not evidence that Travelers knew it was acting unreasonably or acted with such reckless disregard that knowledge can be imputed to it.[70]  And the Court finds that taking the facts in the light most favorable to Harvey Property, even if Mr. Harrell was rude and aggressive on one occasion before conducting an additional inspection, this does not provide sufficient support for a claim that Travelers either knew it was acting unreasonably or "act[ed] with such reckless disregard that such knowledge may be imputed to it"[71] with respect to its processing and investigation of the claim (particularly when the parties still went up on the roof to do the inspection).

The Court finds that taking the disputed evidence in the light most favorable to Harvey Property, no reasonable jury could find that Travelers acted in bad faith: the claim for damage to the tile roofs was fairly debatable; Travelers reasonably investigated and processed the claim; and no showing of subjective unreasonableness has been made. Accordingly, the Court grants summary judgment to Travelers on Harvey Property's bad faith claim.

## IV.  Punitive Damages

Under Arizona law, punitive damages are not recoverable for breach of contract unless there is an underlying tort, such as bad faith.[72]  Because the Court grants summary

---

[70] *Nardelli*, 277 P.3d at 794–95.

[71] *Id.*

[72] *See Lerner v. Brettschneider*, 598 P.2d 515, 519 (Ariz. Ct. App. 1979).

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 18 of 19

judgment to Travelers on Harvey Property's bad faith claim, it also grants summary judgment to Travelers on any request for punitive damages.[73]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant The Travelers Indemnity Company's Motion for Partial Summary Judgment at Docket 329 on Harvey Property's claims for bad faith and punitive damages. On or before **May 16, 2016**, the parties shall file revised exhibit lists, witness lists, and deposition designations that remove any witnesses, exhibits, and designations that will not be presented at trial as a result of this order.

DATED this 12th day of May, 2016.

*/s/ Sharon L. Gleason*
United States District Judge

---

[73] *Cf. Hoa v. State Farm Fire & Cas. Co.*, No. CV-12-631, 2014 WL 1152967, at *8 (D. Ariz. Mar. 14, 2014) ("Under Arizona law, punitive damages cannot be awarded for breach of contract; rather, punitive damages are only available when an action sounds in tort. . . . In this case, because the bad faith tort claim will be dismissed, the underlying breach of contract claim will not support an award of punitive damages. Therefore, the Court will grant State Farm's motion for summary judgment on [plaintiff's] claim for punitive damages.").

2:12-cv-01536-SLG, *Harvey Prop. Mgmt. v. Travelers Indem. Co.*
Order re Motion for Partial Summary Judgment
Page 19 of 19